**FBFG** | Finkelstein, Blankinship, Frei-Pearson & Garber, LLP



March 11, 2026

The Honorable Philip M. Halpern
United States District Judge
Southern District of New York

Re: *Weinberg, et al. v. CleanChoice Energy, Inc.*; No. 7:23-cv-09685

Dear Judge Halpern:

Pursuant to F.R[...] [...]vidual practice Rule 4(D),
following meet and c[...] [...]ence, Plaintiffs request a
conference to resolve [...] [...]alidation Protocol."

> Application for a conference granted. The Court will address the parties' dispute regarding their "Search and Validation Protocol" at the discovery conference scheduled for April 2, 2026 at 2:30 p.m.
>
> The Clerk of Court is respectfully requested to terminate the letter-motion pending at Doc. 75.
>
> SO ORDERED.
>
> _____
> Philip M. Halpern
> United States District Judge
>
> Dated:  White Plains, New York
>         March 12, 2026

**Background And Ou**[...] [...]dered ESI Protocol (ECF
No. 66) requires the Pa[...] [...]Protocol. In early January,
Defendants disclosed t[...] [...]ts from 18 custodians and
six ESI sources. They also advised that they intend to use a "TAR 2.0" algorithm for ESI review.

What matters most is the overall quality of Defendants' production. The Parties agree on a 75% "recall" target where "recall" is the percentage of responsive documents in the overall collection that have been found through a search and review process. *See In re Diisocyanates Antitrust Litig.*, 2021 WL 4295729, at *8 (W.D. Pa. Aug. 23, 2021) (S.D.N.Y. Mag. Judge J. Francis (Ret.) noting that "70-80% estimated recall is often considered reasonable by the courts."). The Parties also agree that validation is the most critical aspect of TAR, especially in ESI intensive cases. "Validation" is a process for auditing the search and review to ensure it achieves the target recall rate. However, Defendant's proposed validation methodology is opaque, and it threatens significant downstream schedule disruptions. Early methods for surfacing party differences regarding relevancy and scope are critical in ESI intensive cases. Early detection methods allow

**Hon. Philip M. Halpern**

production gaps to be spotted *before* discovery is too advanced. *See In re Uber Techs., Inc., Sex. Assault Litig.*, 2024 WL 3491760, at \*6 (N.D. Cal. Mar. 15, 2024) (overruling defendant's objection to transparency and allowing plaintiffs to "independently assess" TAR 2.0 accuracy). Accordingly, and because the Parties have unsuccessfully worked for more than 6 weeks on a protocol, Plaintiffs ask that the Court enter the version attached as <u>Exhibit A</u>. This version aligns with the protocol ordered in *Uber* and many other complex litigations, including in this District.

**<u>Dispute 1: Defendant Ignores Documents Were Search Terms Are Ineffective</u>**: Defendant seeks to backtrack on a settled issue. Section III.8 of the ESI Protocol states that "[d]ocuments that are reasonably believed to be responsive and for which text-based search technologies are fundamentally ineffective such as images, spreadsheets, etc., **<u>must</u> be reviewed without culling** by search terms, TAR, or other technologies that rely primarily on text." Emphasis added. Defendant collected such documents for search and review but refuses to follow the ESI Protocol, has delayed for weeks, and now asks Plaintiffs to justify why the ESI it affirmatively collected for search is "reasonably believed to be responsive." The Court would be well justified in holding Defendant to the ESI Protocol it agreed upon. Indeed, the *Uber* court overruled a defense objection to nearly identical language and required review of all such files because "[i]t is more efficient for the Court to direct the parties now regarding unsearchable documents, rather than leaving the issue for a later meet and confer process." *Uber* at \*8. Here, Defendant already agreed to this language.

Nevertheless, Plaintiffs have offered a compromise. For documents that are not reviewed in the TAR process, Plaintiffs have offered that Defendant sample **<u>virtually all</u>** document categories and can cease review of any given category if Defendant shares the reviewed documents with Plaintiffs. *See* Ex. A, Sec. I.6.  Defendant is not being asked to review too many documents.

**<u>Dispute 2: Disclosure of Validation Documents</u>**: Consistent with best practices, Plaintiffs ask to

review the non-privileged validation documents. *See, e.g.*, *Uber* at *6 (ordering production of *all* non-privileged documents in validation sample). Professor Maura Grossman co-invented TAR 2.0, and when she was acting as special maser in *Rio Tinto plc v. Vale S.A.,* 2015 WL 13956130, at *2 (S.D.N.Y. Sept. 8, 2015) she ordered a validation process in which non-responsive documents were produced. Doing this here will quickly surface disagreements on relevance and avoid delay. Many courts are in accord.[1] To address any concern about producing sensitive materials, Plaintiffs offered the 25-document *in camera* safe harbor proposed by the Rabiej Litigation Law Center. This prevents delay and is aligned with the "unprecedented degree of transparency and cooperation among counsel" required for TAR. *In re Valsartan*, 337 F.R.D. 610, 622 (D.N.J. 2020).

### DEFENDANT CLEANCHOICE'S POSITION

CleanChoice has collected, reviewed, and produced nearly 100,000 documents outside the search term process; many thousands more are forthcoming. CleanChoice also agreed to most of Plaintiffs' validation demands, including late instead of early search-term validation—even though early validation would have ensured the comprehensive review corpus, proper TAR training, and timely review that Plaintiffs now say they desire. Plaintiffs, on the other hand, have not compromised at all. They continue to insist that CleanChoice: (1) personally review hundreds of thousands of non-text-searchable documents just because they are in custodians' files, and (2) disclose non-responsive documents to Plaintiffs, with no cause. The Court should reject those proposals and enter CleanChoice's version (Exhibit B) instead.[2]

---

[1] *See Fed. Hous. Fin. Agency v. JPMorgan Chase & Co., Inc.*, No. 11 Civ. 06188 (S.D.N.Y. Aug. 6, 2012) (July 24, 2012 Transcript at 9, 14–15, 24) (for the TAR process to work, "it needs transparency and cooperation of counsel" and confirming production of nonprivileged training documents); *Winfield v. City of New York*, 2017 WL 5664852, at *11 (S.D.N.Y. Nov. 27, 2017); *Bridgestone Ams., Inc. v. Int'l Bus. Machs. Corp.*, 2014 WL 4923014, at *1 (M.D. Tenn. July 22, 2014) (the court "expects full openness in this matter" regarding TAR training); *In re Biomet M2a Magnum Hip Implant Prod. Liab. Litig.*, 2013 WL 1729682, at *2 (N.D. Ind. Apr. 18, 2013) (urging producing party to "remain open to" producing "the nonprivileged documents included in the statistical sample").

[2] Exhibit C is a redline showing the differences between Plaintiffs' and CleanChoice's proposals.

**Dispute 1: Review of Non-Text-Searchable Documents.** 20,346 files in CleanChoice's custodial records cannot be captured by search terms because they are not text-searchable (e.g., images, video/audio files, data-only spreadsheets) and are not attached to text-searchable files. Plaintiffs want CleanChoice to review those *and* the 141,664 non-text-searchable documents (plus families) that *are* attached to searchable documents (meaning search terms can capture them).[3] But the so-ordered ESI Protocol provides for review of non-text-searchable files *only* if they "are reasonably believed to be responsive." (Dkt. 66, Part III.8). Tellingly, Plaintiffs have never said why they "reasonably believe[]" those files may be "responsive." The Court should reject their unjustified, unreasonable, unduly burdensome[4] demand.

As shown in Exhibit B, CleanChoice proposed a compromise for the documents that lack searchable family members based on its e-discovery expert's analysis of file type: full review of 287 documents, random sampling of 13,699, and no review of 6,360. Plaintiffs rejected it. Exhibits A and C show that Plaintiffs insist CleanChoice's outside counsel personally review each of the document types that ordinarily contain text as well as the greater of 20% or 50 of each of 30 different file types for the 704,597 non-text-searchable documents with families. Plaintiffs also demand that CleanChoice then *produce* all those documents, even the non-responsive ones (which itself is improper for the reasons below—indeed, even the *Uber* plaintiffs did not request it). Plaintiffs' proposal should be denied and CleanChoice's reasonable proposal should be adopted.

**Dispute 2: Plaintiffs' Pre-Emptive Review of *Non-Responsive* Documents**. Plaintiffs ask the Court to order CleanChoice to produce documents that CleanChoice's attorneys determine are ***non-responsive*** so that Plaintiffs can check CleanChoice's work. This approach—which Plaintiffs' counsel described as allowing "the fox in the hen house"—is an extraordinary measure

---

[3] All numbers will increase as five additional custodians' files are being collected (Plaintiffs wanted *eight*).
[4] On top of attorney time, CleanChoice would also have to pay to host an additional 1.4 TB of data.

that courts uniformly reject absent good cause. In fact, Plaintiffs do not cite a single case in which a Court ordered a party, over its objection, and without good cause, to give opposing counsel (and the Court) access to non-responsive materials. They want this Court to be the first. As a case Plaintiffs cite notes, "it seems ***contrary to the rules of discovery*** to require disclosure of non-responsive documents." *Diisocyanates*, 2021 WL 4295729, at \*9 (emphasis added).[5]

Plaintiffs' other cases only undermine their position. In *Winfield*, the court ordered the defendant to allow the plaintiffs to review "sample sets of non-privileged documents" because—after TAR review was complete—the defendant was credibly accused of under-coding responsiveness. Here, no such accusation has been made; review has not even begun. In *Uber*, a court adopted the ***only*** proposal before it with a specific methodology for TAR validation. Here, in contrast, the TAR validation method is agreed, and the dispute is about Plaintiffs' access to documents that CleanChoice's attorneys (not TAR) deem non-responsive—a question *Uber* does not address.[6] In short, as a sister court put it, "Plaintiffs' assertion that they sh[ould] be permitted to review non-privileged documents coded as non-responsive is wholly unsupported by the law." *In re Exactech Polyethylene Orthopedic Prods. Liab. Litig.*, 347 F.R.D. 572, 590 (E.D.N.Y. 2024).

Plaintiffs' "25-document *in camera* safe harbor" is no compromise. It assumes that Plaintiffs have a default right to all non-privileged materials,[7] treats CleanChoice's attorneys as though they are not competent, trustworthy officers of the Court, and asks this Court to act as a document reviewer absent any indication that such an extraordinary measure is warranted.

The Court should reject Plaintiffs' proposals and enter CleanChoice's protocol.

---

[5] Parties have been ordered to allow opposing counsel to review non-responsive documents only where "earlier versions of TAR" were employed, not where (as here) continuous active learning is employed. *Id.*

[6] Plaintiffs' other cases fare no better. The parties in *Rio Tinto, Fed. Housing*, *Bridgestone*, and *Biomet* ***agreed*** to share non-responsive documents. *Valsartan* addressed documents that ***TAR***, not attorneys, coded non-responsive.

[7] Obviously, not all of CleanChoice's material will be relevant. For example, Plaintiffs chose to limit the class to New York customers and it necessarily excludes customers like Mr. Weinberg who must arbitrate their claims.

The parties thank the Court for its attention to this matter.

Respectfully submitted,

/s/ J. Burkett McInturff
J. Burkett McInturff
**WITTELS MCINTURFF PALIKOVIC**
305 Broadway, 7th Floor
New York, New York 10007
Tel: (910) 476-7253
jbm@wittelslaw.com

/s/ D. Greg Blankinship
D. Greg Blankinship
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, New York 10601
Tel: (914) 298-3281
gblankinship@fbfglaw.com

*Counsel for Plaintiffs and the Proposed Class*