UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOANNE SUDAKOW and MICHAEL WEXLER, on Behalf of Themselves and All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>CLEANCHOICE ENERGY, INC.,<br><br>    Defendant. | Case No.: 7:23-cv-09685-PMH |

[PLAINTIFFS' PROPOSED]

**SEARCH AND VALIDATION PROTOCOL FOR DEFENDANT'S USE OF SEARCH TERMS AND TECHNOLOGY-ASSISTED REVIEW**

### I.    SEARCH TERMS

1. The Defendant will use a RelativityOne Early Case Assessment (ECA) workspace for the application of search terms.

2. The Parties have begun the process of negotiating in good faith regarding the core set of search terms that Defendant will apply (i.e., as adapted to Relativity's dtSearch operators and syntax), the custodial and non-custodial sources to which the search terms will be applied, the applicable date filters, any changes from workspace defaults (e.g., for noise and stop words), and any previously applied culling.

3. The Defendant shall provide hit reports for the search terms each party proposes, including the total number of documents being searched, the total number of unique documents with search term hits, the total number of unique documents with search term hits with their families, and the total number of unique documents without search terms hits, along with the following with respect to each proposed search term in the collection:

1

(a) the number of documents with hits for that term,

(b) the number of documents with hits for that term and their families, and

(c) the number of unique documents with hits for that term, i.e., documents which do not have hits for any other term.

4. Once the core set of search terms is in its final or substantially final form, the Parties will (i) agree as to whether a method for identifying potential common misspellings of the core search terms should be applied, and if so, what method, (ii) meet and confer to determine which purported common misspellings should be run alongside the core set of search terms for purposes of generating hit reports for all search terms, (iii) generate such hit reports containing the information listed in paragraph 3 above, and (iv) after review of the hit reports, meet and confer to determine which common misspellings should be added to the core set of search terms. In the event of any impasse related to search terms, the matter may be submitted to the Court for resolution.

5. The Search Term corpus shall be constituted by all the documents to which search terms were applied.

6. Insufficient Text Documents refers to all documents in the Search Term corpus that have insufficient text to be suitable for the application of search terms and that are not manually reviewed by Defendant's subject matter experts ("SMEs") as part of the technology-assisted review described in Section II. The Insufficient Text Documents will be assigned to one of the following three categories based on their file type:

(a) Full Review: Insufficient Text Documents of the following file types shall constitute Full Review Documents: emails, calendar entries, Microsoft Word documents and equivalents, and PowerPoint files and equivalents. The Full Review Documents shall be promoted to Relativity for manual review by Defendant's SMEs.

(b) Presumptive Full Review: Insufficient Text Documents of the following file types shall constitute Presumptive Full Review Documents: Microsoft Office Excel Open XML Format, Microsoft Access 2007 Database, Adobe Portable

Document Format, Encrypted Microsoft Office Excel, Text - Western European, Apple iWork 2013-2019 Numbers File, Microsoft Publisher Document, OneNote 2007+ Format, Relativity Short Message Format, Generic MP4 container, QuickTime Movie, RIFF/WAVe standard Audio, LAME encoded MP3 audio (ID3 v2.x tag), MP3 audio (ID3 v1.x tag), Broadcast Wave File audio, Macromedia Flash Player Compressed Movie, MP3 audio (ID3 v2.x tag), MP3 audio, LAME encoded MP3 audio, LAME encoded MP3 audio (ID3 v1.x tag), MPEG Video, 3GPP multimedia audio/video, GoGo encoded MP3 audio (ID3 v2.x tag), Unknown, XMill compressed XML, ArcView DataBase Index, ArcView Shape, CPIO ASCII archive, Quake archive, and ZIP compressed archive. A simple random sample of the greater of 50 documents or 20% of the documents in each file type shall be generated, promoted to Relativity, and manually reviewed by Defendant's SMEs. Following such review, Defendant will then (i) notify Plaintiffs whether Defendant's SMEs believe all remaining documents of that file type should be reviewed or whether the review should stop. (ii) For any file types Defendant believes should not be reviewed in full, Defendant will produce all previously reviewed non-privileged documents of that file type, and (iii) the Parties will meet and confer on any disagreements and unresolved issues will be submitted to the Court for resolution.

(c)     Presumptive Sample Review: Insufficient Text Documents of the following file types shall constitute the Presumptive Sample Review Documents: Portable Network Graphics, JFIF-EXIF JPEG Bitmap, Adobe Photoshop image, JPEG Bitmap, JFIF JPEG Bitmap, InDesign Document, Tagged Image File Format Bitmap, GIF animated bitmap, GIF89a Bitmap, WebP bitmap, Scalable Vector Graphic, IGES Drawing, HEIC Image File, Encapsulated Postscript File, Windows Icon. A statistically significant and random sample of the Presumptive Sample Review Documents shall be generated, promoted to Relativity, and manually reviewed by Defendant. Following such review, Defendant will then (i) notify Plaintiffs whether Defendant's SMEs believe all remaining documents of that file type should be reviewed or whether the review should stop. (ii) For any file types Defendant believes should not be reviewed in full, Defendant will produce all previously reviewed non-privileged documents of that file type, and (iii) the Parties will meet and confer on any disagreements and unresolved issues will be submitted to the Court for resolution.

(d)     No Review: Insufficient Text Documents of the following file types shall constitute No Review Documents: Unknown, Mac AppleDouble encoded, Mac OS X folder information, Windows Shortcut, iPhone Ringtone, Unknown OLE Document CLSID {00000000-0000-0000-0000-000000000000}, Generic Win/DOS Executable, Microsoft Developer intermediate file format, Microsoft Linker Database, Microsoft Program DataBase, TrueType Font, TrueType Font Collection, OpenType - CFF compact font format, Win32 Executable Generic, avast! antivirus skin, Encrypted DRM Document, Win32 EXE PECompact compressed (generic), Win32 Executable MS Visual C++ (generic), and

3

Windows compiled resource. The No Review Documents will not be promoted to Relativity and will not be reviewed for production by Defendant.

(e) If any Insufficient Text Documents are of a file type that is not listed above, Defendant will notify Plaintiffs as to which of the four foregoing categories Defendant seeks to classify that file type. The Parties will meet and confer on any disagreements and unresolved issues will be submitted to the Court for resolution.

(f) ~~For documents marked by Defendant's SMEs as non-responsive~~ but produced in accordance with Sections I.6(b) and (c) above Defendant shall have the right to withhold up to 25 non-responsive documents it has concerns about, which documents shall be subject to an *in camera* examination to evaluate whether the ~~documents are indeed not relevant.~~

(g) The Plaintiffs' review of non-responsive documents produced in accordance with Sections I.6(b) and (c) above may take place (a) at such location or locations mutually agreed by the Parties, on a date and time to be agreed to by the Parties, or (b) via a secure web-based viewer on a date and time to be agreed to by the Parties. Any documents coded Not Responsive by the Defendant to which the Plaintiffs' designated reviewers are provided access as part of this review are provided for the limited and sole purpose of raising and resolving disagreements, if any, regarding the coding calls made by the Defendant. Any such disagreements shall be recorded on a Classification Dispute Log (the "Log"), which shall be in a form agreed upon by the Parties. Once Plaintiffs' designated reviewers complete their review of the, the Parties shall meet and confer to resolve any differences in coding designations. If resolution cannot be reached, the issue shall be submitted to the Court for resolution.

7. The Search-Term Null Set consists of all documents in the Search Term corpus that (i) do not contain a hit for any search term, (ii) are not family members of any hit document, and (iii) are not designated for linear manual review outside of TAR.

## II.  TECHNOLOGY-ASSISTED REVIEW

8. The Defendant will use RelativityOne's Review Center for technology-assisted review ("TAR"). RelativityOne's TAR methodology ("TAR 2.0") utilizes continuous active learning ("CAL") to classify and prioritize documents for attorneys to review.

9. The TAR corpus, i.e., the document collection to which TAR will be applied, shall be constituted by the documents recalled by the final set of search terms agreed to by the Parties (or determined by the Court) and the family members of those documents.

10. Under Review Center TAR 2.0, the TAR corpus is ingested into the TAR software, and the Review Center's predictive model is trained, i.e., taught how to distinguish responsive from non-responsive documents, through attorney review of documents presented for review by the Review Center using a prioritized review queue which prioritizes the documents in the review queue from most to least likely to be responsive.[1] Attorney reviewers review documents in descending order of predicted responsiveness. As review progresses, the TAR 2.0 model continuously updates and reprioritizes documents until a stopping point is reached and validation is conducted.

11. The Defendant will monitor the relevance rate of the review, which generally will drop over the course of a TAR 2.0 review, as fewer and fewer unreviewed responsive documents remain in the TAR corpus.

12. Once at least 1,000 most recently reviewed documents from the prioritized review queue with coverage mode turned off are found to contain 10% or fewer documents marked responsive, the Defendant may pause the review and turn to end-to-end validation (as discussed in Section III). The Defendant may extend the review past this point if they believe sufficient thoroughness has not been achieved.

13. The 10% responsiveness rate (or lower responsiveness rate chosen by Defendant) will be calculated only over documents drawn directly into the prioritized review queue due to their own predicted relevance score ("primary documents"). It will not include family members

---

[1] In the early stages of review, Defendant may turn on the Review Center's Coverage Mode. When Coverage Mode is turned on for a prioritized review queue, the queue switches from serving up the highest-ranking documents. Instead, it serves up documents that are better for training the model. These are documents with scores near 50, which usually have different content and topics from documents that the model has previously seen. Having the reviewers review these documents helps the model learn from a more diverse set of documents and become stable more quickly.

of these primary documents, even if said family members are reviewed at the same time as said primary documents.

### III.    END-TO-END VALIDATION OF DEFENDANT'S RESULTS

14. An End-to-End Validation Sample consisting of random samples from four strata will be drawn from the deduplicated sources below as follows:

(i)     one simple random sample of 385 documents from the documents reviewed and coded responsive in TAR prior to validation;

(ii)    one simple random sample of 385 documents from the documents reviewed and coded non-responsive in TAR prior to validation;

(iii)   one simple random sample of 1,537 documents from the documents in the TAR corpus which were not coded prior to validation; and

(iv)    one simple random sample of 1,537 documents from the documents in the Search Term corpus that did not contain a search term.

15. In determining which sampling strata a document sampled from the TAR Set falls in, only the direct coding status of that document will be considered, not any coding it may inherit due membership in a family. For example, a document coded non-responsive will fall in the non-responsive stratum, even if it is a family member of a document coded as responsive.

16. Documents included in the End-to-End Validation Sample shall be reviewed de novo by the Defendant, in random order, without indication of prior coding status.

17. Recall will be calculated using the following quantities:

(a)     the number of documents in the TAR corpus that were coded responsive prior to validation.

(b)     the number of documents sampled from (a) that are coded responsive in the de novo review;

(c)    the number of documents in the TAR corpus that were coded nonresponsive prior to validation;

(d)    the number of documents sampled from (c) that are coded responsive in the de novo review;

(e)    the number of documents in the TAR corpus that were not coded prior to validation;

(f)    the number of documents sampled from (e) that are coded responsive in the de novo review;

(g)    the number of documents in the Search Term corpus which did not contain a search term, and

(h)    the number of documents sampled from (g) that are coded responsive in the de novo review.

Recall $= [((a)\div 385)\times(b)] \div [(((a)\div 385)\times(b)) + (((c)\div 385)\times(d)) + (((e) \div 1,537)\times(f)) + (((g) \div 1,537)\times(h))]$.

18. The Defendant will disclose the calculated Recall estimate derived from the End-to-End Validation Sample and the input quantities used to calculate them.

19. The Plaintiffs' designated reviewers shall have the opportunity to review all non-privileged documents in the End-to-End Validation Sample, without any knowledge of how any individual documents were coded by the Defendant, in order to perform a blind comparison of the provided Recall estimate. Except that Defendant shall have the right to withhold up to 25 non-responsive documents from the End-to-End Validation Sample it has concerns about, which documents shall be subject to an *in camera* examination to evaluate whether the documents are indeed not relevant.

20. The Plaintiffs' review may take place (a) at such location or locations mutually agreed by the Parties, on a date and time to be agreed to by the Parties, or (b) via a secure web-based viewer on a date and time to be agreed to by the Parties. Any documents coded Not

7

Responsive by the Defendant to which the Plaintiffs' designated reviewers are provided access as part of this review are provided for the limited and sole purpose of raising and resolving disagreements, if any, regarding the coding calls made by the Defendant. Any such disagreements shall be recorded on a Classification Dispute Log (the "Log"), which shall be in a form agreed upon by the Parties. Once Plaintiffs' designated reviewers complete their review of the End-to-End Validation Sample, the Parties shall meet and confer to resolve any differences in coding designations. If resolution cannot be reached, the issue shall be submitted to the Court for resolution.

21. If the recall estimate derived from the End-to-End Validation Sample is below 75%, or if the documents designated responsive in the End-to-End Validation Sample that were previously unreviewed or reviewed and marked as non-responsive indicate that the search terms or the TAR tool's model of responsiveness was too limited, e.g., if those newly coded as responsive documents in the End-to-End Validation Sample included novel or significant documents, then the Parties will meet and confer to discuss remedial action to locate an adequate proportion of the remaining unreviewed relevant documents in the TAR corpus and Search Term corpus, including but not limited to: continuing reviewing from the prioritized queue, training alternative predictive models focused on the documents newly coded as responsive in the End-to-End Validation Sample, and expanding the search terms and augmenting the TAR population. If Defendant conducts additional review as a result of the validation process discussed above, whether because the TAR population is augmented or because TAR designates additional documents as responsive, then the Parties will meet and confer in good faith as to whether asking the Court to extend discovery and/or other case management deadlines is warranted. After the Defendant discloses these metrics, the Parties

may meet and confer to discuss questions and issues relating to the end-to-end validation process.

22. Upon completion of the end-to-end validation process, Defendant shall produce all documents identified as responsive, and in addition to the disclosures set forth above, the Defendant will provide summary information regarding the search terms and TAR 2.0 methodology used in connection with their review. This disclosure will include the following metrics: (i) the total number of documents in the Search Term corpus; (ii) the total number of documents in the Search Term corpus which contained search terms; (iii) the total number of documents in the Search Term corpus which did not contain search terms; (iv) the total number of documents in the TAR corpus; (v) the number of documents produced from the TAR corpus; (vi) the number of documents identified as privileged from the TAR corpus; (vii) the number of documents withheld from the TAR corpus; (viii) the number of documents in the TAR corpus that were not reviewed by human reviewers; (ix) the size of the End-to-End Validation Sample; (x) the number of responsive documents identified within the End-to-End Validation Sample; and (xi) a narrative summary of the validation process, including how the End-to-End Validation Sample was drawn and how recall was calculated.

STIPULATED TO AND RESPECTFULLY submitted on March 11, 2026

By: /s/ Michael D. Matthews, Jr.

Michael D. Matthews, Jr.
Diane S. Wizig*
Netra Sreeprakash
Louise Root*
MCDOWELL HETHERINGTON LLP
1001 Fannin Street, Suite 2400
Houston, Texas 77002
Telephone: (713) 337-5580
Facsimile: (713) 337-8850
matt.matthews@mhllp.com
diane.wizig@mhllp.com
netra.sreeprakash@mhllp.com
louise.root@mhllp.com

*Attorneys for Defendant CleanChoice
Energy, Inc.*

*Admitted pro hac vice

/s/ J. Burkett McInturff

J. Burkett McInturff
Daniel J. Brenner
WITTELS MCINTURFF PALIKOVIC
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (914) 775-8862
Facsimile: (914) 775-8862
jbm@wittelslaw.com
djb@wittelslaw.com

D. Greg Blankinship
FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP
One North Broadway, Suite 900
White Plains, New York 10601
Telephone: (914) 298-3281
gblankinship@fbfglaw.com

*Attorneys for Plaintiffs and the Proposed
Class*

SO ORDERED:

_____
Hon. Philip M. Halpern

Dated: __April 2, 2026_____

White Plains, New York

10